### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

  **v.**                   **Case No. 2:21-cr-227**
                               **JUDGE EDMUND A. SARGUS, JR.**

**YOUSIF AMIN MUBARAK**

        **Defendant.**

### OPINION AND ORDER

Defendant Yousif Amin Mubarak is charged with seven counts of Transmission of a Threat in Interstate Commerce in violation of 18 U.S.C. § 875(c). (Superseding Indictment, ECF No. 54.) Five of these counts allege that Defendant issued bomb threats by telephone to businesses and schools in the Canal Winchester area and the remaining two counts accuse Defendant of threatening a Fairfield County Sheriff's Office ("FCSO") Dispatcher and a Municipal Court Judge. (*Id.*) This matter is presently before the Court pursuant to Defendant's Motion in Limine, the Government's Notice of Intent to Offer Evidence Under Rule 404(b), Notice of Intent to Introduce Evidence Pursuant to Rules of Evidence 803(6), 902(11) and 902(14), and the Government's supplemental notices to said motions. (ECF Nos. 99, 101, 106, 110, 127, & 129.) For the reasons set forth below, Defendant's motion is **GRANTED in part**, **DENIED in part** and **RESERVED in part**.

### I.      MOTION IN LIMINE STANDARD

Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine. The United States Supreme Court has noted, however, that the practice of ruling on such motions "has developed pursuant to the district

court's inherent authority to manage the course of trials." *Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984). The purpose of a motion in limine is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an evenhanded and expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.,* 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997)). Notwithstanding this well-meaning purpose, courts are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.,* 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975).

Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019). To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.,* 326 F. Supp. 2d at 846; *Koch,* 2 F. Supp. 2d at 1388; *cf. Luce,* 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.,* 326 F. Supp. 2d at 846.

Denial of a motion in limine does not mean that the evidence is guaranteed to be admitted at trial; the court will hear objections to such evidence if and when they arise at trial. *Maseru v. Univ. of Cin.*, No. 1:18-cv-106, 2022 U.S. Dist. LEXIS 188340, at *3 (S.D. Ohio Oct. 13, 2022) (citing *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010)). Further, the court may, in its discretion, alter a previous in limine ruling during trial. *Luce*, 469 U.S. at 41–42.

## II.    DISCUSSION

Defendant's Motion in Limine and opposition responses to the Government's notices takes issue with two classes of evidence the Government intends to intro at trial: First, Defendant seeks to preclude evidence of uncharged conduct or other acts allegedly committed by Defendant; and second, Defendant opposes the admission of certain business records and forensic extraction evidence allegedly linked to Defendant. (ECF Nos. 104, 106, & 110.) The Court will address each class of evidence in turn.

### A.  "Other Acts" Evidence.

Defendant challenges the admissibility of uncharged other acts allegedly committed by Defendant. (ECF No. 99 & 106.) These uncharged other acts largely fall within three categories: (1) other calls Defendant allegedly placed to businesses and schools in the Canal Winchester area on September 12 and 13, 2021; (2) other calls Defendant allegedly made to dispatchers at FCSO; and (3) evidence, including phone calls, relating to Defendant's municipal court proceedings before Judge Andrea Peeples. (*See* ECF No. 101 at 5-9.) The Government contends that this evidence is admissible as either (a) background evidence that is "inextricably intertwined" with evidence of the charged conduct—that is, the evidence makes up the *res gestae* of the case; or (b) evidence to prove Defendant's motive, intent, identity, and plan under Federal Rule of Evidence 404(b). (*Id.* at 12-23.)

A brief summary of the relevant law is in order. Under Rule 404(b), evidence of a "crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). This evidence may, however, be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

But the Sixth Circuit recognizes an exception to Rule 404(b) for *res gestae* evidence—*i.e.*, evidence "consist[ing] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). *Res gestae* evidence, often referred to simply as "background evidence," must possess a "causal, temporal or spatial connection with the charged offense." *Id.* Thus, such evidence typically is a "prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* "These 'intrinsic acts' are different than 'extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Harris*, 2021 U.S. App. LEXIS 32397, at *7 (6th Cir. Oct. 27, 2021) (quoting *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015)).

The Sixth Circuit has delineated the contours of *res gestae* evidence on a number of occasions. For example, the Sixth Circuit has noted that evidence tending to "logically prove *an element* of the crime charged" constitutes intrinsic evidence. *See United States v. Sadler*, 24 F.4th 515, 555 (6th Cir. 2022) (citing approvingly to *United States v. Peete*, 781 F. App'x 427, 434 (6th Cir. 2019); *see also Churn*, 800 F.3d at 779 (noting that "[*r*]es gestae evidence is sometimes also known as 'intrinsic evidence'"). So too is evidence that illuminates the relationship between a defendant and a witness. *See Churn*, 800 F.3d at 779 (holding that testimony that "explains the relationship between the witness and the defendant" is properly admissible as *res gestae*).

Finally, while *res gestae* evidence is not subject to Rule 404(b) analysis, before the Court admits such evidence, the evidence must still satisfy the traditional Rule 403 balancing test. *See Hardy*, 228 F.3d at 750.

4

The Court will now turn to the admissibility of the three categories of other-acts evidence that the Government intends to introduce.[1]

### a. Other calls Defendant allegedly placed to businesses and schools in the Canal Winchester area on September 12 and 13, 2021.

The Government has specifically identified the following phone calls that Defendant allegedly placed to businesses and schools in the Canal Winchester area on September 12 and 13, 2021, as admissible *res gestae* evidence:

- Call to Sunoco Gas Station originating from Defendant's telephone number, occurring shortly after 4:30 p.m. on September 12, 2021. In this call, after Defendant allegedly asked the Sunoco cashier if there was money in the drawer, Defendant stated he was going to rob them.

- Call to BP Duchess Gas Station originating from Defendant's telephone number, which reported receiving a call from someone who stated he was going to come to the gas station and rob them.

- Originating from TextMe toll records for telephone number (916) 902-2254, the same number used to call Brew Dog, Home Depot, and Best Western (Counts 1-3), calls to Walmart and Kroger involving a bomb threat, calls to Buffalo Wild Wings, Wendy's, and Massey's Pizza involving robbery threats, a call to Taco Bell threatening to shoot up and rob the restaurant, a call to McDonald's threatening to end an employee's life, and calls to KFC, Bob Evans, Dollar Tree, Popeyes, and Domino's Pizza, which did not generate reports involving harm. This TextMe account was active from September 8, 2021, to September 13, 2021, and the calls listed above all occurred during a period beginning on September 12, 2021, at 4:42 p.m. and ending that same day at 11:51 p.m.

- Originating from TextMe toll records for telephone number (740) 879-6487, the same number used to call Canal Winchester Middle School and Pickerington North High School (Counts 5-6), a single call to Walmart. The calls to these three locations were the only calls placed using this TextMe number between September 13, 2021, at 7:05 a.m. and 2:13 p.m.

- Originating from TextMe toll records for telephone number (916) 659-3286, calls to FCSO and Canal Winchester High School between 6:57 a.m. and 7:00 a.m. on September 13, 2021. The call to Canal Winchester High School involved a threat

---

[1] Defendant's Motion in Limine references other acts involving Pizza Hut, J.R. in Licking County, and a case in Clackamas County, Oregon. (ECF No. 104 at 3-4.) The Government represents that it does not intend to introduce evidence relating to these matters, and therefore the Court declines to address their admissibility.

of a suicide bomber and instructions to remove any women and children from the building.

(ECF No. 101 at 5-7.)

The Government contends that these calls are admissible *res gestae* evidence because they inform the overall story and are bound up with the charged offenses. (*Id.* at 12.) The Government adds that inclusion of these calls will help the jury understand and weigh the facts of this case. (*Id.*) In response, Defendant asserts that the Government is improperly relying on *res gestae* as a means of introducing a broad swathe of impermissible evidence. (ECF No. 106 at 3-5.)

The Court finds that both parties are correct, at least to some extent. Keeping in mind that *res gestae* evidence is limited in terms of its "temporal proximity, causal relationship, or spatial connections" to the charged offense, *see Hardy*, 228 F.3d at 749, the Court finds that many of the calls identified above fall within the "narrow purpose" underlying the *res gestae* exception to Rule 404(b). *See United States v. Brown*, 888 F.3d 829, 838 (6th Cir. 2018) (quotation omitted). First, the call to the Sunoco Gas Station, which set in motion the events that occurred on September 12 and 13, 2021, is admissible because it is "inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *Hardy*, 228 F.3d at 748. Temporally speaking, this is the first threatening call Defendant made, and it occurred just over an hour before the conduct charged in Count 1. Inclusion of this call is appropriate, as it serves as a "prelude to the charged offense" and facilitates the telling of a "cogent story" relating to the charges Defendant is facing. *See Gibbs*, 797 F.3d at 423–24 (quotation omitted). Moreover, this call originated from Defendant's telephone number, making this evidence probative of Defendant's identity. *See Sadler*, 24 F.4th at 555 (explaining that evidence tending to "logically prove *an element* of the crime charged" constitutes intrinsic evidence).

The threatening call to the BP Duchess Gas Station is also admissible *res gestae* evidence. Like the call to Sunoco, the call to BP occurred in the Canal Winchester area (spatial connection) contemporaneously with the charged offenses (temporal proximity) and originated from Defendant's telephone number, thus tending to prove Defendant's identity as it relates to the charged conduct.

The next set of calls the Government intends to introduce originated from the TextMe number ending in 2254. Like the previously identified calls, these calls are spatially and temporally connected to the charged offenses. They also tend to prove the identity of the caller for Counts 1-3, as these calls were made using the same TextMe number. Furthermore, some of these calls triggered a response from law enforcement, and therefore their inclusion assists the jury by shedding light on the responders' relationship to Defendant, *see Churn*, 800 F.3d at 779, while also explaining their presence at several of the relevant businesses in the area at the time in question. In other words, the inclusion of some of these calls is appropriate to provide the necessary context for the charged offenses.

But the Court recognizes the ease in which a party can abuse the *res gestae* doctrine in order to introduce impermissible character evidence. To that end, the Court will preclude the Government from introducing evidence of the calls that did not generate reports involving threats—that is, the Government may not introduce the calls to KFC, Bob Evans, Dollar Tree, Popeyes, and Domino's Pizza. Even assuming these calls constitute *res gestae* evidence (or Rule 404(b) evidence, for that matter), they fail the Rule 403 balancing test, as any probative value they may have is substantially outweighed by the danger of confusing the issues and needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. The remaining calls—the bomb threats to

Walmart and Kroger and the threatening calls to Buffalo Wild Wings, Wendy's, Massey's Pizza, Taco Bell, and McDonald's—are admissible.

The Court now turns to the TextMe call to Walmart originating from the number ending in 6487. The Government represents that the call to Walmart was one of the only three calls ever made from this TextMe account, with the other two calls giving rise to Counts 5 and 6. (ECF No. 106 at 6.) The Government has not, however, provided the Court with any information as to the substance of this call. While this single phone call is both temporally and spatially tethered to the charged offenses, the Court will reserve judgment on the admissibility of this call until the record is developed further.

Finally, the Government intends to introduce two calls originating from the TextMe number ending in 3286. According to the Government, this TextMe number was issued on September 13, 2021, and made just two calls before its deletion later that day: one call to FCSO and another call to Canal Winchester High School, which included a bomb threat. (*Id.* at 7.) Although neither of these calls gave rise to any of the charges contained in the Superseding Indictment, the TextMe number ending in 3286 shares the same unique identifier as the TextMe numbers ending in 2254 and 6487. In other words, even though the TextMe telephone numbers are different, they are nonetheless linked to the same device. (*See id.* at 2-3.) As with the previous calls discussed above, the calls at issue here share a spatial and temporal connection with the calls in the charged offense. Indeed, the call placed to Canal Winchester High School, which involved a threat of a suicide bomber and instructions to remove any women and children from the building, occurred less than 10 minutes before the bomb threat Defendant allegedly issued to Canal Winchester Middle School (Count 5) and just over half an hour prior to the bomb threat made against Pickerington North High School (Count 6). (*See id.* at 7; Superseding Indictment at 4-5,

8

ECF No. 54.) Thus, not only is this call spatially and temporally connected to the alleged offenses, but the call is also "directly probative of the charged offenses," as the call speaks to Defendant's intent and identity—both matters at issue in this case. *See Hardy*, 228 F.3d at 748. Accordingly, the Court finds the call to Canal Winchester High School admissible *res gestae* evidence.

The Court will, however, reserve judgment with regard to the call made to FCSO. The Government's brief provides no details as to the contents of the call, and without such details, the Court cannot adequately evaluate the admissibility of the call.

In sum, the Court finds the following calls admissible under the *res gestae* exception to Rule 404(b): the call to Sunoco Gas Station; the call to BP Duchess Gas Station; the calls from the TextMe number ending in 2254 to Walmart, Kroger, Buffalo Wild Wings, Wendy's, Massey's Pizza, Taco Bell, and McDonald's; the call from the TextMe number ending in 3286 to Canal Winchester High School. In contrast, the Court precludes the admission of the calls to KFC, Bob Evans, Dollar Tree, Popeyes, and Domino's Pizza. The Court reserves judgment as to the remaining calls. Finally, to the extent that the admission of these calls poses a danger of unfair prejudice to Defendant, the Court finds that any unfair prejudice can be mitigated through adequate jury instructions.

### b. Other calls Defendant allegedly made to FCSO.

The next category of evidence the Government intends to introduce consists of more than 100 phone calls Defendant made to dispatchers at FCSO. (ECF No. 106 at 7-8.) Proceeding chronologically, the Government seeks to admit evidence of a call Defendant made to FCSO on May 30, 2021. (*Id.* at 7.) The Government represents that a negative interaction between Defendant and an FCSO deputy prompted this call, in which Defendant, using his (614) 726-0809 phone number, identified himself by name and complained that an FCSO deputy wouldn't take a report

after Defendant claimed that certain Speedway employees illegally looked through his cell phone after Defendant dropped his phone on the gas station's floor. (*Id.*) Next, the Government wishes to admit a phone call Defendant made to FCSO on June 2, 2021, in which Defendant alleged that he was the victim of FCSO's repeated harassment. (*Id.*) In this call, Defendant made the following statements: " . . . if I continue getting harassed, then I am going to take action . . .," ". . . If you get me fair and square, that's OK, but if I keep getting randomly harassed by one of your officers, that's not gonna be good for neither [sic] of me or anyone . . .," and " . . . I am on high alert watching you guys . . . ." (*Id.*) The remaining calls, of which there are more than 100, occurred between September 12, 2021, and September 13, 2021. (*Id.*) Of these calls, the Government represents that it seeks to introduce those in which Defendant acknowledges that he is not presently in Ohio, expressed animosity towards FCSO and their dispatchers, engaged in vulgarity and sexual harassment, and accused the Sheriff of selling narcotics in jail. (*Id.* at 8.) In addition, during one of these calls, occurring just prior to the call alleged in Count 4, Defendant repeated his complaint that the FCSO was harassing him and he stated he was "going to harass them back." (*Id.* at 8.)

Much like the previous section, the Government contends that Defendant's calls to the FCSO are admissible as *res gestae* evidence as wells as direct evidence of the charged conduct. (*Id.* at 12-15.) The Court agrees in part.

First, the Court finds the May 30, 2021, call to FCSO admissible as *res gestae* evidence. Not only does this call possess a spatial connection to the charged conduct, but it also has a causal connection, as it sheds light on Defendant's motive to commit the conduct alleged in Count 4 of the Indictment. Further, the nature of this call (*i.e.*, Defendant expressing dissatisfaction with an FCSO deputy) helps explain Defendant's relationship with the FCSO. Finally, because Defendant

identified himself during this call, which originated from the (614) 726-0809 phone number, the call serves to establish Defendant's identity as it relates to the charged conduct.

Second, the June 2, 2021, call is admissible *res gestae* evidence for the same reasons as the May 30, 2021, call. In addition, this call is "directly probative of the charged offense," *see Hardy*, 228 F.3d at 748, as the call allegedly depicts a frustrated Defendant suggesting that he may "take action" against FCSO and that he is "on high alert watching you guys." (*See* Gov. Notice at 7, ECF No. 101.)

The Court now turns to the more-than-100 phone calls Defendant allegedly made to FCSO between September 12, 2021, and September 13, 2021. The Government represents that it intends to solicit testimony on the total number of calls Defendant made to the FCSO during this period, irrespective of the substance of these calls. (*Id.* at 20.) The Court finds this proposed testimony to be admissible as *res gestae* evidence, given the temporal, spatial, and causal connection between the calls and the charged conduct. Further, the volume of the calls, amassed in less than 24 hours, speaks to Defendant's specific intent in committing the alleged conduct. Also, reference to the volume of calls is necessary to "complete the story of the charged offense" by providing the jury with the appropriate context surrounding the charged offenses. *See Hardy*, 228 F.3d at 748.

In addition to finding the total number of calls made to be admissible under the *res gestae* doctrine, the Court also finds the following specific calls identified by the Government to be admissible: the calls wherein Defendant acknowledged being at large outside of Ohio and the call in which Defendant stated that, because FCSO was harassing him, he was "going to harass them back." In addition to being temporally and spatially connected to the charged conduct, these calls further establish Defendant's identity. Moreover, with regard to the call where Defendant stated he would "harass them back," this call provides a direct causal connection to Count 4 of the

11

Indictment. Finally, the admission of these calls is appropriate to help elucidate the relationship between Defendant and FCSO and to facilitate the telling of a "cogent story" as it relates to the charged conduct. *See Gibbs*, 797 F.3d at 424.

But the Court reserves judgment on the admissibility of the remaining calls Defendant allegedly placed to FCSO on September 12, 2021, and September 13, 2021—that is, the Court reserves judgment concerning the calls wherein Defendant "expressed animosity towards FCSO and the dispatchers as well as engaged in vulgarity, sexual harassment, and referenced the continued theme of the Sheriff selling narcotics in jail . . . ." (Gov. Notice at 8, ECF No. 101.) The Government has provided little in the way of specifics concerning these calls, and therefore the Court cannot say with any significant degree of certainty that they fall within the scope of the *res gestae* doctrine or Rule 404(b), let alone whether these calls can survive Rule 403's balancing test.

In sum, the Court finds the following calls to be admissible: the calls made on May 30, 2021, and June 2, 2021, as well as the calls made between September 12 and 13, 2021, in which Defendant acknowledged being at large outside of Ohio and stated that, because FCSO was harassing him, he was "going to harass them back." The Government may also introduce testimony on the total number of calls Defendant made to FCSO. But as to the remaining calls Defendant made to FCSO on September 12 and 13, 2021, the Court reserves judgment. To the extent this ruling creates any risk that this evidence may unfairly prejudice Defendant, the Court notes its willingness to provide an appropriate limiting instruction.

     **c. Defendant's case before Franklin County Municipal Court Judge Peeples and other calls to her chambers.**

The Government intends to introduce the following evidence concerning Defendant's pending case before Judge Peeples and other calls he made to her chambers:

- The existence of Defendant's case, but not its nature, and Judge Peeples' decision to revoke his bond;

- That Defendant made 87 calls to Judge Peeples' chambers from September 1, 2021, until approximately September 21, 2021;

- A September 11, 2021, voicemail Defendant left for Judge Peeples wherein he provided his name, phone number, and indicated he would continue to call the Judge and the police department;

- A call on September 11, 2021, wherein Defendant stated that "she decided to, bluntly, put a warrant, or a warrant block, so I can't renew my stuff. And she is doing that intentionally. Um, I don't have a future court date. Um, she's just, I don't know what the fuck she's doing. But that bitch crossed the line";

- A call to Judge Peeples' chambers made on September 12, 2021, where Defendant stated "I'm gonna get my payback";

- A call on September 20, 2021, where Defendant left his name and telephone number; and

- Other calls to Judge Peeples' chambers in which Defendant referenced his pending case, his dislike for the Judge and her handling of his case, which routinely involved Defendant calling the Judge vulgar names and suggesting sexual acts, in addition to stating his belief that officers were selling narcotics in jail.

(Gov. Notice at 8-9, 13, ECF No. 101.)

Starting with the admissibility of Defendant's case before Judge Peeples and her decision to revoke his bond, the Court finds this proposed evidence to be admissible under the *res gestae* doctrine. The introduction of this information is critical for the jury to understand Defendant's relationship to the victim in Count 7 of the Indictment. Additionally, this evidence speaks to Defendant's identity and his motive as it pertains to the charged conduct.

Turning to the phone calls, the Court notes, as an initial matter, that all calls identified by the Government are temporally and spatially connected to the charged conduct, which weighs in favor of their admissibility as *res gestae* evidence. *See Hardy*, 228 F.3d at 748. Further, most of these calls possess other characteristics that tip the *res gestae* analysis in favor of admission. First, the calls on September 11, 2021, and September 20, 2021, capture Defendant identifying himself and his phone number, which speak to a disputed element of the charged conduct (*i.e.*, identity). As for the calls where Defendant stated that Judge Peeples "crossed the line" by placing a warrant block on Defendant and Defendant claimed "I'm gonna get my payback," these calls not only help explain the relationship between Defendant and Judge Peeples, but they also provide a direct causal connection for the conduct alleged in Count 7 of the Indictment. Further, these calls are "closely related in both time and nature to the crime charged." *See Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quoting *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir. 1982)).

As was the case with the numerous calls Defendant allegedly made to FCSO, the Government also intends to solicit testimony on the total number of calls Defendant made to Judge Peeples in September of 2021. For largely the same reasons articulated above, the Court finds the total volume of calls Defendant made to Judge Peeples admissible. The quantity of these calls during such a compressed period—that is, 87 calls in a span of 21 days—is evidence of Defendant's specific intent to commit Count 7. Moreover, regardless of the substance of these calls, the volume of these calls provides the jury with the necessary backdrop to contextualize the charged conduct.

Admission of the evidence listed above also satisfies Rule 403's balancing test. First, although this evidence necessarily reveals that Defendant had a case before Judge Peeples, the Court's ruling precludes the Government from introducing the specific allegations of the case.

14

Second, and more importantly, the probative value of the case is substantial, as it evinces Defendant's motive and intent for making the calls to Judge Peeples while also establishing Defendant's identity. In other words, any prejudice Defendant may face from the introduction of this evidence does not substantially outweigh its probative value.

But the Court cannot say that all the proposed evidence is admissible, at least at this stage of the proceedings. Specifically, given the limited briefing concerning some of the calls Defendant placed to Judge Peeples' chambers, the Court reserves judgment on the calls in which Defendant allegedly "called the Judge vulgar names and suggested sexual acts like those said to the FCSO dispatchers" and "referenced the belief that officers in the jail were selling narcotics." (*See* Gov. Notice at 9, ECF No. 101.) These calls may ultimately be admissible, but without more clarity as to their substance, the Court can neither analyze them within the *res gestae* or Rule 404(b) framework, nor properly apply Rule 403's balancing test.

### d.  The evidence deemed admissible also satisfies Rule 404(b)

Of the evidence the Court has deemed admissible under the *res gestae* doctrine, the Court finds this evidence equally admissible under Rule 404(b).

Federal Rule of Evidence 404(b) permits the admission of prior acts for non-propensity purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Red. R. Evid. 404(b). This "other acts" evidence is admissible so long as it satisfies the following three-part test:

> *First*, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third*, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). Additionally, in the context of a criminal case, the prosecutor must "provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A).

Here, the evidence already identified as admissible under the *res gestae* doctrine also satisfies Rule 404(b)'s three-step process for determining admissibility. First, the Court is satisfied that sufficient evidence exists establishing that these other acts occurred. Proof of this evidence need only satisfy the "factual reliability" test, meaning "the government need not prove probative 'other acts' beyond a reasonable doubt; rather, that proof must merely be sufficiently compelling such that 'the jury can reasonably conclude that the act occurred and that the defendant was the actor.'" *United States v. Carney*, 387 F.3d 436, 452 (6th Cir. 2004) (quoting *Dowling v. United States*, 493 U.S. 342, 348 (1990)). The Government has carried its burden here. The Government represents that both the toll records for Defendant's telephone number, (614) 726-0809, and his TextMe numbers document calls placed to each of the businesses, schools, and individuals identified. (Gov. Notice at 16, ECF No. 101.) Further, the IP address connected to the TextMe calls is directly connected to Defendant's iCloud records. (*Id.*) In addition, there are audio recordings capturing the calls to FCSO and Judge Peeples wherein Defendant identifies himself and his phone number. (*Id.*) As for Defendant's calls to FCSO in May and June of 2021, Defendant's interaction with the Speedway employees is documented in an incident report and a memorandum. (*Id.*) Finally, sufficient evidence exists of Defendant's case before Judge Peeples, as it is a public record.

The second step of the three-step process is also met—that is, the Court also finds this evidence probative of a material issue other than character. "Evidence of other acts is probative of

a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Jenkins*, 345 F.3d at 937 (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)). The calls Defendant placed to other businesses and schools using his telephone number and the TextMe numbers, corroborated by toll records, are probative of two elements in this case: intent and identity. The specifics of these calls, the numbers from where they originated, as well as their volume, are probative of these elements. As for the calls to FCSO, including Defendant's prior interactions with FCSO, and the calls to Judge Peeples' chambers, this evidence speaks not only to Defendant's identity and intent, but also his motive to commit the charged conduct. That is to say, evidence of Defendant's unsatisfactory experiences with FCSO and Judge Peeples establishes the root of his hostility towards these victims, and therefore illuminates Defendant's motives as they relate to the charged conduct. By revealing Defendant's motives, the Court may properly consider this evidence under Rule 404(b). *See United States v. Osborn*, 12 F.4th 634, 639 (6th Cir. 2021) ("Even within the constraints of trial, the district court can consider prior acts when they may be probative of motive or intent.").

Third, the Court finds the probative value of this evidence is not substantially outweighed by its potential prejudicial effect. Rule 403 of the Federal Rules of Evidence permits the exclusion of relevant evidence only if its probative value is substantially outweighed by a danger of, among other things, unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. Unfairly prejudicial evidence is evidence that "tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988) (citing *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Rule 403 is a rule of inclusion as it establishes a high bar for exclusion. *See United States v. Lang*, 717 Fed. Appx. 523, 538 (6th Cir. 2017); *United States v.*

*McCutchen*, 150 Fed. Appx. 517, 523 (6th Cir. 2005); *see also United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996) (explaining that courts must "view the evidence in the light most favorable to the government by maximizing the probative value of the evidence and minimizing its potential prejudice").

In the present case, the probative value of the evidence is high. The calls placed to the businesses, schools, FCSO, and Judge Peeples almost exclusively occurred in September 2021. *See Haywood*, 280 F.3d at 721 (noting that, when determining if other-acts evidence is probative of intent, the Sixth Circuit "look[s] to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue") (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)). And for the reasons discussed above, these calls, documented by toll records, some of which were also recorded, are also probative of Defendant's identity and intent. Further, Defendant's interactions with FCSO and his proceedings before Judge Peeples are probative of his specific intent to commit the charged conduct because they reveal his underlying motives.

While this evidence is certainly prejudicial, it is not *unfairly* prejudicial. *See Sanders*, 95 F.3d at 453 (citing *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir. 1994)). *Sanders*, 95 F.3d at 453 ("Evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403.") (citing *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir. 1994)). Moreover, to the extent that Defendant is concerned the jury will improperly rely on this evidence for propensity purposes, the Court will provide an appropriate limiting instruction upon request. Finally, Defendant's opposition argues that that the introduction of the Government's proposed evidence is unfairly prejudicial because Defendant's expert will testify that he observed no evidence of (1) TextMe usage on Defendant's phone at the time of the

documented TextMe calls, and (2) a shared IP address between Defendant's phone or iCloud account and the device on which the TextMe calls were made. (ECF No. 106 at 5.) The Court finds that, in light of the Government's representations to the contrary, Defendant's argument falls short of demonstrating unfair prejudice, although such argument may, of course, raise a reasonable doubt as to the charged conduct.

Finally, the Court finds that the Government, by filing its notice six weeks in advance of trial, has provided sufficient notice of its intent to introduce this evidence.[2] *See United States v. French*, 974 F.2d 687, 694-95 (6th Cir. 1992) (no violation of Rule 404(b)'s notice requirement where government provided notice one week before trial); *United States v. Paul*, 57 Fed. Appx. 597, 607 (6th Cir. 2003) (finding that notice provided one week before trial satisfied Rule 404(b)'s notice requirement).

In sum, for the reasons set forth above, the Court concludes that the evidence already held to be admissible *res gestae* evidence is also admissible under Federal Rule of Evidence 404(b).

## B. Business Records and Forensic Extraction Evidence

The Government also seeks to introduce phone records, TextMe account records, Apple account records associated with Defendant, and forensic extraction evidence from Defendant's cell phone under Federal Rules of Evidence 803(6), 902(11), and 902(14). (*See* Gov. Notices, ECF Nos. 99, 109, 127, & 129.) Defendant opposes the introduction of these records, arguing that the Government has failed to provide adequate notice of these records because the Government failed

---

[2] Defendant's opposition challenges the admission of certain text messages allegedly involving Defendant, arguing that the Government's failure to date-stamp a seemingly partial text-message thread is insufficient to satisfy the notice requirement under Rule 404(b). (ECF No. 106 at 6.) The Court, however, declines to address this argument, as the Government's notice does not appear to seek introduction of these text messages. (*See* ECF No. 101 at 5-9 (listing potential other-acts evidence that the Government intends to admit).)

to specifically identify these records, making it impractical for the Defendant to locate and review them. (Def. Opp'n at 1-2, ECF No. 110.)

The Court is inclined to agree with Defendant. Rule 803(6) provides that records of regularly conducted business activities may be admissible by testimony of a custodian of the records or, in the alternative, by a certification that complies with Rule 902(11). Fed. R. Evid. 803(6). Turning to Rule 902(11), it provides:

> The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court. Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them.

Fed. R. Evid. 902(11).

Here, the Government represents that it intends to offer the following evidence into the record by certification of the custodian or a similarly qualified person:

- TextMe account records for (a) 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, (b) 740-879-6487, and (c) 916-659-3286;

- Phone records from (a) Canal Winchester Local School District (Canal Winchester Middle School); (b) Trithium Solutions, LLC (Pickerington North High School); (c) Genesys (Franklin County Municipal Court); and AT&T (Defendant's phone records);

- Call records for Canal Winchester Middle School; and

- Apple Accounts in Defendant's name.

(Gov. Notices, ECF Nos. 99, 109, & 127.)

In compliance with Rule 902(11), the Government included certifications from custodians for the TextMe account records, the phone and call records from Canal Winchester Local School District, Trithium Solutions, LLC, phone records for the Franklin County Municipal Court, Defendant's AT&T phone records, and Defendant's Apple account records. (*See* ECF Nos. 99-1,

99-2, 99-3, 99-4, 99-5, 109-1, 109-2, 127-1, 129-1.) The Government further represents that it has disclosed these records to Defendant. (*See* Gov. Notice at 2 nn.1–2, ECF No. 99; Supp. to Gov. Notice at 1 n.1, ECF No. 127.)

The Court credits the Government's representations. But the Court is sympathetic to Defendant's position. Specifically, the Court recognizes the difficulties Defendant faces in reviewing these voluminous records given that the Government's filings neither included the relevant records as attachments nor identified the records by Bates-label number. This mode of identification directly undermines the notice provision of Rule 902(11). *See, e.g., United States v. Daniels*, 723 F.3d 562, 579-81 (5th Cir. 2013) (central aspect of rule is to provide adverse party sufficient time to investigate and challenge the adequacy of the underlying records). In an effort to remedy this issue prior to trial, the Court directs the Government to identify the records it intends to introduce in a manner that gives Defendant a reasonable ability to review the adequacy of the underlying records. For example, the Government may do this either by listing the Bates-label numbers associated with the relevant records or by providing Defendant with the *specific* records the Government contends are business records and self-authenticating.

As for the forensic extraction evidence, the Court is inclined to find this evidence admissible under Federal Rule of Evidence 902(14). Rule 902(14) provides as follows:

> Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902(14). This Rule allows for the introduction of extracted cell phone data where the data is properly authenticated by certification in conformity with Rule 902(11). *See United States v. Dunnican*, 961 F.3d 859, 871–872 (6th Cir. 2020) (holding that district court did not commit

plain error in admitting evidence extracted from a seized cell phone where the extracted evidence was properly authenticated by the ATF special agent who performed the digital extraction).

In the case at bar, the Government represents that it intends to introduce evidence acquired from the cell phone that law enforcement seized from Defendant pursuant to a warrant. (Gov. Notice at 3, ECF No. 99.) In compliance with Rule 902(14), the Government attached a signed certification from FBI Digital Forensic Examiner Brian Ledbetter, Jr., who performed an advanced logical physical extraction of the cell phone. (*Id.* at 3-4.) Mr. Ledbetter, Jr., certified the reliability and verifiability of the extraction, noting the success of the extraction process because the extraction software generated a digital fingerprint of the extracted data and the software indicated that the extraction was successful. (*See* Ledbetter Certification, ECF No. 99-6.) In response to the Government's notice of intent to introduce this evidence, Defendant reserved his right to oppose the Government's notice, noting that admission of this evidence may require expert review. (ECF No. 110 at 3.) Against this backdrop, the Court is inclined to admit the forensic extraction data from Defendant's cell phone.

## IV. CONCLUSION

For the foregoing reasons, in accordance with this Opinion and Order, Defendant's Motion in Limine is **GRANTED in part**, **DENIED in part**, and **RESERVED in part**, as described herein. (ECF No. 104.)

The Court finds the following evidence **ADMISSIBLE** under the *res gestae* doctrine and Rule 404(b):

- The call to Sunoco Gas Station;

- The call to BP Duchess Gas Station;

- The calls from the TextMe number ending in 2254 to Walmart, Kroger, Buffalo Wild Wings, Wendy's, Massey's Pizza, Taco Bell, and McDonald's;

22

- The call from the TextMe number ending in 3286 to Canal Winchester High School;

- The calls made to FCSO May 30, 2021, and June 2, 2021;

- The calls made to FCSO between September 12 and 13, 2021, in which Defendant acknowledged being at large outside of Ohio and stated that, because FCSO was harassing him, he was "going to harass them back";

- The Government may introduce testimony on the total number of calls Defendant made to FCSO from September 12, 2021, through September 13, 2021;

- The existence of Defendant's case before Judge Peeples, but not its nature, and Judge Peeples' decision to revoke his bond;

- The volume of calls Defendant allegedly made to Judge Peeples' chambers from September 1, 2021, until approximately September 21, 2021;

- The calls Defendant made to Judge Peeples' chambers on September 11 and 20, 2021, wherein Defendant provided his name and telephone number; and

- The September 11, 2021, call where Defendant stated that Judge Peeples "decided to, bluntly, put a warrant, or a warrant block, so I can't renew my stuff. And she is doing that intentionally. Um, I don't have a future court date. Um, she's just, I don't know what the fuck she's doing. But that bitch crossed the line."

The Court finds the following **INADMISSIBLE**:

- The calls Defendant allegedly made to KFC, Bob Evans, Dollar Tree, Popeyes, and Domino's Pizza on September 12 and 13, 2021.

And the Court **RESERVES JUDGMENT** as to the following:

- The remaining calls Defendant allegedly placed to businesses and schools in the Canal Winchester area on September 12 and 13, 2021;

- The remaining calls Defendant allegedly made to FCSO on September 12 and 13, 2021;

- The remaining calls to Judge Peeples' chambers in which Defendant allegedly "called the Judge vulgar names and suggested sexual acts like those said to the FCSO dispatchers" and "referenced the belief that officers in the jail were selling narcotics."

As to the business records the Government intends to introduce at trial, the Court **DIRECTS** the Government to promptly identify these records in a manner that gives Defendant a reasonable ability to review the adequacy of the underlying records.

      **IT IS SO ORDERED.**

**8/18/2023**                       **s/Edmund A. Sargus, Jr.**
**DATE**                               **EDMUND A. SARGUS, JR.**
                                        **UNITED STATES DISTRICT JUDGE**